UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JULIANA RUBIO,

                          Plaintiff,                01-CV-1806 (TCP)

   -against-                               **MEMORANDUM** and
                                                             **ORDER**

COUNTY OF SUFFOLK and FRANK WRIGHT,
in his official and personal capacities,

                          Defendants.
------------------------------------------------------------X

PLATT, District Judge.

        Plaintiffs Juliana Rubio ("Rubio") and Dianna Yu ("Yu") move pursuant to Fed. R. Civ. P. 56(c) for summary judgment[1] against the County of Suffolk (the "County"), on their municipal liability claims (the "Monell" claims), on the ground that plaintiffs "have substantial evidence *beyond any factual dispute*, to satisfy and corroborate each legal element necessary, [sic] to sustain Plaintiff's 42 U.S.C. Section 1983 Monell Claim...related to:

    (i)       Suffolk County's police department's custom, pattern and practice of condoning,

---

[1] Dianna Yu's name does not appear in the caption of the Amended Complaint filed in the above-entitled action, but counsel's moving papers have been submitted on behalf of "[p]laintiffs Juliana Rubio and Dianna Yu." (Ptfs' Mem. at 1). Dianna Yu filed a separate Complaint on January 23, 2002, against defendants County of Suffolk and Frank Wright in an action docketed separately with this Court, docket number 02-CV-0517, also assigned to the undersigned. Also pending before this Court are several related cases, filed against defendants County of Suffolk and Frank Wright. These cases are <u>Deon v. County of Suffolk, et al.</u>, 01-CV-1812; <u>Torres v. County of Suffolk et al.</u>, 01-CV-1813; <u>Kowal v. County of Suffolk, et al.</u>, 01-CV-1807; and <u>Pannone v. County of Suffolk, et al.</u>, 01-CV-1814. Plaintiffs Deon and Torres join in the motion for summary judgment filed by Rubio and Yu. (Ptfs' Mem. at 1). Therefore, in so far as this Order disposes of the claims asserted by Rubio in 01-CV-1806 against defendant County of Suffolk, it also disposes of the actions brought by Yu, Deon and Torres against the same defendant, in actions 02-CV-0517, 01-CV-1812, and 01-CV-1813 respectively.

1

> permitting, ignoring and thereby facilitating a series of unlawful arrests, seizure, civil rights violations, and sexual assaults against women, known by the COUNTY to have been committed over a period of time by defendant Police Officer Frank Wright; and
>
> (ii) condoning, permitting, and thereby facilitating a widespread custom and pattern by other Suffolk County police officers, including permitting a series of civil rights violations, discriminatory practices and sexual misconduct by officers."

Ptfs' Mem. at 1.

In addition, the County moves for summary judgment against plaintiffs on the basis that plaintiffs failed to establish liability by the County under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). For the following reasons, the Court agrees with the County and accordingly dismisses the action brought against it.[2]

## STATEMENT OF FACTS

Plaintiff Rubio alleges that on December 27, 2000, defendant Frank Wright ("Wright") while on duty as Suffolk County Police Officer, stopped plaintiff for allegedly failing to use her car's headlights. (Compl. at ¶¶ 6-7)[3]. Wright administered several sobriety tests on plaintiff, the last of which plaintiff purportedly failed. (Compl. at ¶ 9). Plaintiff asserts that "abusing his authority as a police officer...Wright...then placed plaintiff in handcuffs and forced her into his car...then drove plaintiff...[to] a vacant parking lot" where he asked plaintiff to disrobe "or go to the station and get arrested." (Compl. at ¶ 10). Wright "had plaintiff disrobe and remove all of her clothing and then stand outside without her clothes in the below freezing

---

[2]Plaintiffs also moved for summary judgment against defendant Frank Wright. A decision on that motion will be issued separately by the Court.

[3]Plaintiffs first filed a Complaint in this action on March 23, 2001. Plaintiffs subsequently filed an Amended Complaint on September 3, 2004. Unless otherwise indicated, all references to Compl. or "Complaint" are to the Amended Complaint.

temperatures for approximately 15 minutes while he shined his flashlight on her naked body." (Compl. at ¶ 11). Wright made comments to plaintiff, then "had Plaintiff put her clothes back on, drove her back to her car, ordered her to remain silent and not disclose or speak about his actions, threatened her that she was to remain at that location, and that if she did not follow his instructions that he would seek her out and have her arrested." (Compl. at ¶ 12).

Plaintiff asserts that as a result of Officer Wright's actions, plaintiff suffered and continues to suffer *inter alia* "severe emotional distress, mental anguish, fear, anxiety, shock, and humiliation, and was compelled to seek medical and psychological aid, treatment and attention, permanent damage to reputation and standing in the community, loss of comfort, support, extreme mental and emotional harm and stress, impairment of earning power, and other injuries not yet fully ascertained." (Compl. at ¶ 15).

Plaintiffs Yu, Deon and Torres brought similar allegations against defendant Wright. Wright was indicted before this Court on March 27, 2002. Wright pled guilty to four instances of acting in an unconstitutional manner toward plaintiffs Deon, Yu, Rubio and Torres. Wright was sentenced to five years in prison for the violations.

## DISCUSSION

**1. Summary judgment standard**

Plaintiffs and the County each move for summary judgment. Courts may grant summary judgment when the moving party demonstrates that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). On motions for summary judgment, courts must construe all facts and draw all inferences in favor of the non-moving party. See Howley v. Town of Stratford, 217 F.3d 141,

150-51 (2d Cir. 2000). When no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. See Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). "[C]onclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

### 2. The Monell claim

#### a. *Municipal liability standard*

Plaintiffs assert a 42 U.S.C. § 1983 claim against the County. That section permits a person deprived of a federal right by a person acting under color of state law, such as police officer Wright here, to seek compensation in federal court. See Richardson v. McKnight, 521 U.S. 399, 403 (1997). Municipal liability under Section 1983 exists only if the municipality itself can be said to have been responsible for the violation. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). The plaintiff in a Section 1983 claim bears the burden of establishing municipal liability. See Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). A municipality may not be liable solely under a *respondeat superior* theory for the acts of its employees. Monell, 436 U.S. at 691. Rather, a municipality is liable for its employees' unconstitutional acts only when those acts resulted from a municipal custom or policy. See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986); Monell, 436 U.S. at 690, 694. A plaintiff may not rely on conclusory assertions that the municipality has a particular custom or policy that may give rise to municipal liability. See Walker v. City of New York, 974 F.2d 293, 300 (2d Cir. 1992).

4

Courts have found a municipality liable for a Section 1983 violation under four circumstances: (1) when there is an officially promulgated policy endorsed or ordered by the municipality, Monell, 436 U.S. at 690; Pembaur, 475 U.S. at 480; (2) when there exists a custom or practice that is so pervasive and widespread that the municipality had either actual or constructive knowledge of it, City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988); Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985); (3) where actions were taken or decisions made by the municipal employee who, as a matter of state law, is responsible for establishing municipal policies with respect to the subject matter at issue, Praprotnik, 485 U.S. at 129-30; Pembaur, 475 U.S. at 480-83; or (4) where the failure of the municipality to train or supervise its employees rises to the level of deliberate indifference to the constitutional rights of others, City of Canton v. Harris, 489 U.S. 378, 385 (1989); Walker, 974 F.2d at 297.

   b.  *Factual record related to the Monell claim*

Plaintiffs here move for summary judgment against the County on the basis that no factual dispute exists that the Suffolk County's police department has a custom or practice "of condoning, permitting, ignoring and thereby facilitating a series of unlawful arrests, seizure, civil rights violations, and sexual assaults against women, known by the [County] to have been committed over a period of time by defendant Police Officer Frank Wright." (Ptfs' Mem. at 1). In essence, as it may be discerned from the facts of this case, *infra*, plaintiffs' statement amounts to an allegation that the Suffolk County Police has a policy or custom of condoning and permitting the molestation of women who are stopped for traffic violations. Plaintiffs also contend that the County has a practice of failing properly to train and supervise its police officers "about the safeguards that were supposed to be in place, to protect against foreseeable sexual

5

misconduct and civil rights violations against female citizens." (Ptfs' Mem. at 4). The County counters that it is entitled to summary judgment because plaintiffs failed to submit sufficient evidence to establish municipal liability as a matter of law. Defendant is correct.

Plaintiffs have put forth the following facts to sustain their claim against the County. Several Suffolk County Police Department lieutenants and sergeants (identified as O'Brien, Ponzo, Wertheim and McManus) testified that they had knowledge of allegations that defendant Wright detained, seized and sexually abused Tracy Deon, yet each "admitted that they decided to abuse their discretion...by...not filing or proceeding with Ms. Deon's civilian complaint, as required by the Suffolk County Police Department's regulations and rules." (Ptfs' Mem. at 6-7). Additionally, complaints about Officer Wright "went as high up the chain of command as reports to the Suffolk County Police Chief Phillip Robilloto...and Chief Gallagher." (Ptfs' Mem. at 14-15). Moreover, the Internal Affairs Bureau ("IAB") conducted an investigation into police officer Wright's acts, and concluded that "[h]ad the supervisors of Police Officer Frank Wright taken the officer to task with regard to Ms. Deon's complaint, it may have helped in preventing other misconduct against other women between September 2, 2000 and January 1, 2001." (Ptfs' Mem. at 17).

Plaintiffs also assert facts that allegedly support their claim that defendant Suffolk County had pre-existing knowledge of "systemic sexual misconduct and discriminatory practices by its police officers." (Ptfs' Mem. at 18). For example, former police officer John Weeks indicated in a sworn statement that he informed Chief Robillotto of the following sexual misconduct by several police officers:

> "-An October of 1999 incident, whereby Officer Weeks observed Frank Wright with a female [c]ivilian standing outside of a white silverfish car. Later, the white

6

car was vacant and moved to the side of the road, and Officer Frank Wright and the female were not around. *Officer Weeks observed a lack of radio communication by Officer Wright of any arrest of the female, yet both Officer Wright and the woman were gone. The car remained on the side of the road for two hours.*" (emphasis in the original)

"-The observation of inappropriate sexual relations with females by Frank Wright, and Wright's practice of violating the procedure for transport of females."

"-Officer Weeks reported observing unstable police officers, including Paul Denkewitz' obsession with sexual relations with animals and suicidal thoughts."

"-Officer Weeks reported his own harassment and discrimination for his homosexual orientation, at the hands of other Suffolk County Police Officers - reporting same to Chief Gallagher and Chief Robilloto. Yet both chiefs took no action, and Officer Weeks received only retaliation by Chief Robilloto. Both Chiefs were aware of the sexual misconduct and discriminatory practices county-wide, and did nothing to address same."

(Ptfs' Mem. at 19). Former Officer Weeks also testified at his deposition that he indicated to Chief Robilloto that police officer DeWitt routinely stopped female civilian drivers and called them whores. (Ptfs' Mem. at 20). Weeks further testified that the County had a custom or practice of a "blue wall of silence" whereby "supervisory officials covered up police officers' civil and criminal violations." (Ptfs' Mem. at 22).

    *c.*  *The County's liability under the four delineated circumstances*

    On this factual record, the Court finds that the plaintiffs failed to adduce evidence to support their claim for municipal liability under any of the four circumstances outlined above, found to create liability. First, plaintiffs presented no facts to support a claim that the County had an official policy that permitted or encouraged the molestation of women stopped for traffic infractions. See Monell, 436 U.S. at 690; Pembaur, 475 U.S. at 480. In fact, plaintiffs themselves acknowledge so in their reply brief, where they observe that "[t]here is no claim that the County of Suffolk has a policy that overtly authorizes and encourages the molestation of

7

civilians stopped for traffic infractions." Similarly, the County has no official policy endorsing the practice of a "blue wall of silence" or extending courtesies between police officers.

Neither have plaintiffs put forward facts that support the second alternative for establishing municipal liability, i.e. the existence of a custom or practice that is so pervasive and widespread that the municipality had either actual or constructive knowledge of it. See Praprotnik, 485 U.S. at 130; Oklahoma City v. Tuttle, 471 U.S. at 823-24. Actions by subordinate city employees may give rise to municipal liability when they are so manifest as to imply the constructive acquiescence of policymaking officials. Praprotnik at 130; Krulik v. Board of Educ. of the City of New York, 781 F.2d 15, 23 (2d Cir. 1986).

The County is correct that plaintiffs' allegations "demonstrate only the isolated actions of a rogue police officer." (County's Opp. at 7). The Court fails to see how other allegations by the plaintiffs, such as police officer Paul Denkewitz' purported obsession with sexual relations with animals and suicidal thoughts, or former officer Week's alleged harassment and discrimination due to his sexual orientation, relate to plaintiffs' main contention that the County permitted or encouraged the molestation of females stopped for traffic violations or even more generally the molestation of females. Moreover, even assuming that plaintiffs' allegations with respect to other civilians whose constitutional rights were violated relate to the same "custom or practice," the Court is unable to discern how a few violations by a small group of subordinate County employees with no policymaking authority amount to the "pervasive and widespread" custom or practice necessary for municipal liability.[4]

---

[4]The Suffolk County Police Department "has a strength of around 2,500 sworn officers, making it one of the largest police agencies in the country." See http://en.wikipedia.org/wiki/Suffolk_County_Police_Department.

Equally unpersuasive is plaintiffs' allegation that the County endorsed "a blue wall of silence." There are no facts that support the contention that "a blue wall of silence" was a practice so pervasive and widespread that the County had or should have had knowledge of it. See, e.g., Powell v. Gardner, 891 F.2d 1039, 1045 (2d Cir. 1989) (concluding that the "single incident alleged in a complaint, however, especially if it involved only actors below the policy-making level, generally will not suffice to raise an inference of the existence of a custom or policy," and that "[t]he only other evidence to which [plaintiff] points is the testimony of police captain Howard Mandell, which appears to concede that at some point in time Mandell became concerned that assaults by police officers might be covered up by the police department and so testified before a County legislative committee...was entirely insufficient to establish a County policy of condonation or indifference.").

Instances where courts found that a party presented sufficient evidence to permit a jury to infer that the "blue wall of silence" constitutes a custom involve specific findings describing a long-standing pattern by the police department to engage in a code of silence, together with involvement or awareness of that code of silence by individuals with policymaking authority. See, e.g., Jeffes v. Barnes, 208 F.3d 49, 62-64 (2d Cir. 2000) (concluding that "a jury could permissibly find that the code of silence was part of [the Sheriff's] standard operating procedure at the Jail and that his affirmative actions were a direct cause of the violations of plaintiffs' First Amendment rights. In light of the scope, duration [spanning almost four years], openness, and pervasiveness of the retaliation against officers who broke the code of silence, the jury could find that [the Sheriff] was well aware of the existence and thrust of those acts of retaliation."); White-Ruiz v. City of New York, 1996 WL 603983, at *3-4, 8 (S.D.N.Y. 1996)

9

(finding as a principal source of evidence with regard to the matter and for denying the City's summary judgment motion a final report by the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department (the "Mollen Report"), which "documented in detail a pattern of extensive police corruption, extending to many [New York] City precincts and lasting at least several decades" accompanied and maintained by a "code of silence," and finding as additional support for denying summary judgment "the testimony of experts, fellow officers, and then-Commissioner Kelly before the Mollen Commission, acknowledging the persistence of the code of silence."); but see Bryant v. New York City, 92 Civ. 0960 (CPS) (E.D.N.Y. 1994) (granting summary judgment for the City despite invocation of the Mollen Report because the Report did not suggest Departmental approval of a pattern of routine violations of private citizens' civil rights, as alleged by the plaintiffs (cited in White-Ruiz, 1996 WL 603983 at *9-10)). No similar facts were adduced here to support plaintiffs' claims.

Plaintiffs similarly failed to establish municipal liability under the third possible rubric, i.e. by showing that the alleged violations were made by municipal employees who are responsible for establishing policies in the areas implicated by the adverse acts taken against the plaintiffs. Praprotnik, 485 U.S. at 129-30; Pembaur, 475 U.S. at 480-83. Where a final policymaker is the actor, a single action taken by a municipality is sufficient to expose it to liability. Pembaur, 475 U.S. at 480 (holding that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").

"Where an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy.... An official has final

authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983). However, the official's authority must be more than mere discretion in municipal operations. Anthony v. City of New York, 339 F.3d 129, 139-40 (2d Cir. 2003) (finding that a police sergeant, while having discretion to handle certain situations in the field, lacks a sufficient role in the formulation of overall police department official policy to be considered a final decision-maker for § 1983 purposes). The policymaking authority may be "granted directly by a legislative enactment or may be delegated by an official who possesses such authority." Pembaur, 475 U.S. at 483.

Whether a particular official has final policymaking authority, such that his decisions may trigger municipal liability, is to be determined by referring to State law. Praprotnik, 485 U.S. at 124. That determination involves a legal question. Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000). The plaintiff has the burden of proving as a matter of law that the official in question had final policymaking authority on the respective area of municipal business. See Jeffes, 208 F.3d at 57-58.

Here, the plaintiffs did not carry their burden to show as a matter of law that the police officers involved in the alleged civilian violations had policymaking authority on the complained matters. Under the Suffolk County Charter, the Suffolk County Legislature is the policymaker in Suffolk County. See Suffolk County Charter C2-1. The Suffolk County Legislature may delegate policymaking authority to other individuals, and has in the past delegated policymaking authority to the Police Commissioner in limited circumstances. See, e.g., Suffolk County Charter C13-12 (authority delegated on sex offender notification law);

11

Suffolk County Code A13-9 (authority delegated on school crossing guards); Suffolk County Code § 345-34.1 (authority delegated on seizure of vehicles); Suffolk County Code § 700-3 (authority delegated on police substation issues).

The Second Circuit and courts within its umbrella have acknowledged that the Suffolk County Police Commissioner may bind the municipality. See, e.g., Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003) (finding, on the facts of that case, employment decisions by the Suffolk County Police Commissioner, sufficient for municipal liability, because the Suffolk County Commissioner "had authority to set department-wide personnel policies," and noting in that respect that "Gallagher's position provides a sufficient basis for holding the County liable for his adverse decisions with respect to plaintiff."); Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 137, fn.6 (2d Cir. 1999) (noting, without disputing, the district court's acceptance that the Commissioner was a policymaker for the Suffolk County Police Department based on the Suffolk County Charter).

Here, at the time the alleged events took place, the Suffolk County Police Commissioner was John Gallagher, and nothing in the record suggests that he had knowledge of the violations committed by Officer Wright (or other police officers) until they became public in January of 2001. (See County's Rule 56.1 Stat. at ¶¶ 25, 26, 28). Plaintiffs admits so in their brief. (See Ptfs' Mem. at 9, 12 (observing that Police Officer Wertheim did not report to his higher-ups Ms. Deon's sexual assault complaint against Officer Wright, and noting that "[a]lthough it is mandatory under the rules and procedures of the Suffolk County Police Department to fill out a Civilian complaint whenever a complaint of sexual abuse is made...Detective Wertheim further acknowledged that Lieutenant O'Brien, a high-ranking

12

Suffolk County Police official / Lieutenant, nonetheless ignored such policy, and *helped to bury the complaint against Frank Wright by telling Lt. Wertheim...not to send it up the chain of command....*") (emphasis added)); see also Ptfs' Mem. at 24 (stating that "[s]uch harm was inflicted by Defendant Wright, and by Defendant Suffolk County's practice of...'extending a courtesy to Frank Wright' and *keeping the matter away from the captain*.") (emphasis added)).

Apart from failing to show that the Commissioner had knowledge of the alleged violations, plaintiffs failed to show how the several named lieutenants and sergeants, as well as the Chief of Police, had the policymaking authority necessary to bind the County. The fact that the sergeants, lieutenants, or the Chief of Police had discretion to process or investigate Ms. Deon's complaint does not alone give rise to liability. The Supreme Court has rejected the notion that without more the ability to exercise discretion in carrying out municipal functions amounts to policymaking authority. Pembaur, 475 U.S. at 482-83. Moreover, the plaintiffs did not point this Court to any provision of State or local law that subscribes policymaking authority to Suffolk police sergeants and lieutenants, or to the Suffolk County Police Chief. Similarly, plaintiffs have not presented any facts indicating that said lieutenants and sergeants, or the Chief of Police, have been delegated policymaking authority by the Commissioner.

Accordingly, on the record in this case, plaintiffs have not met their burden of showing that the police agents implicated in the alleged violations had "final policymaking authority." Id.; See also Allen v. City of New York, 2007 WL 24796, at *20 (S.D.N.Y. 2007) (concluding that the Chief of Police was not the final policymaker for delaying the arraignment of arrestees because "before the municipality may be held liable for its employees' acts, the deciding official must be responsible for '*establishing*' the final government policy concerning

13

the activity at issue" and "[n]othing submitted by plaintiffs shows that Chief Devlin had been delegated such authority by the Commissioner or by any statutory provision.").

Lastly, plaintiffs failed to establish liability under the fourth circumstance, namely when the municipality failed to train or supervise its employees and said failure raises to a level of deliberate indifference to the constitutional rights of others. City of Canton v. Harris, 489 U.S. at 385; Walker v. City of New York, 974 F.2d at 297. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality...can a city be liable for such a failure under § 1983." City of Canton, 489 U.S. at 389. A single incident is generally insufficient to demonstrate liability under this alternative. See, e.g., Fahle v. Braslow, 913 F.Supp. 145, 150-51 (E.D.N.Y. 1996).

The record in this case does not support a finding that the Suffolk County made such a "deliberate" or "conscious" choice, since the evidence fails to establish that instances of civilian violations like the ones complained of here were so "widespread" or "persistent" to reflect deliberate indifference. See, e.g., White-Ruiz, 1996 WL 603983, at *10 (S.D.N.Y. 1996) (concluding that the plaintiff satisfied for the purpose of defeating summary judgment the test for failure to train or supervise by a municipality because *inter alia* "[t]he [Mollen] Commission report and the testimony of former Commissioner Kelly provide sufficient evidence of the pervasiveness of police misconduct and retaliation against 'rats' and the sure knowledge of the Police Department regarding the need for better training in this area."). Therefore, on the facts in this case, plaintiffs have not demonstrated that "the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need."

City of Canton, Ohio v. Harris, 489 U.S. at 390 fn.10 (1989).

In sum, on the facts in this case plaintiffs have failed to establish municipal liability for defendant Wright's actions under any of the four circumstances where said liability has been found to arise, because plaintiffs have failed to raise a triable issue of fact concerning (i) the existence of an officially promulgated policy endorsed or ordered by the County; (ii) the existence of a custom or practice that was pervasive and widespread; (iii) the involvement by the County's policymaker in the alleged violations of plaintiffs' constitutional rights; and (iv) the County's failure to train or supervise its employees, raising to the level of deliberate indifference to constitutional rights.

**CONCLUSION**

Based on the foregoing, the Court grants summary judgment in all respects for defendant the County of Suffolk and against plaintiffs Juliana Rubio, Dianna Yu, Tracy Deon and Angelina Torres.

SO ORDERED.


                                                  /s/

                                                  Thomas C. Platt, U.S.D.J.

Dated:       Central Islip, New York
              October 9, 2007